IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
_____
                       :
RONALD RAHMAN,         :        HON. JEROME B. SIMANDLE
                       :
        Plaintiff,     :        Civil No. 10-0367 (JBS/KMW)
                       :
    v.                 :
                       :           OPINION
ERIC TAYLOR, et al.,   :
                       :
        Defendants.    :
_____:
```

APPEARANCES:

Ronald Rahman
41782-050
Federal Detention Center
P.O. Box 562
Philadelphia, PA 19104
        Plaintiff Pro Se

Stephen D. Holtzman, Esq.
Jeffrey S. McClain, Esq.
HOLTZMAN & MCCLAIN, PC
524 Maple Avenue, Suite 200
Linwood, NJ 08221
        Counsel for Defendants CFG Health Systems, LLC


**SIMANDLE,** District Judge:

I.   **INTRODUCTION**

This matter arises out of Plaintiff Ronald Rahman's six-month period of detention in the Camden County Correctional Facility ("CCCF") in the second half of 2009.  Plaintiff claims to have suffered dangerously overcrowded and unsanitary conditions and been subjected to constitutionally infirm medical treatment, including exposure to and insufficient treatment of

tuberculosis, during his tenure at the CCCF as a pre-trial detainee.  Defendants in this action are Eric Taylor, Warden of CCCF; CFG Health Systems, LLC; and Jeffrey D. Pomerantz, Medical Director at CCCF.  The matter is currently before the Court on the motion of Defendant CFG Health Systems, LLC (hereafter, "CFG" or "Defendant") to dismiss Plaintiff's Amended Complaint as to CFG for failure to state a claim upon which relief can be granted or, in the alternative, for summary judgment against Plaintiff's claims against CFG. [Docket Item 18.]

Defendant argues that Plaintiff's Amended Complaint does not state a plausible claim for relief against it under 42 U.S.C. § 1983 and, additionally, that Plaintiff cannot point to a dispute of material fact regarding whether Plaintiff was, in fact, exposed to tuberculosis while in Defendant's care, or that his medical treatment amounted to deliberate indifference to a serious medical condition.  Plaintiff argues that the record evidence presents at least a dispute of fact over whether he was exposed to tuberculosis while at the CCCF and whether Defendant punitively extended his period of potential exposure. Additionally, after opposition and reply briefs were filed, Plaintiff submitted two objections to evidence put forward by Defendant and additionally requested that the Court take judicial notice of various scientific facts. [Docket Item 34.]

Both parties have referred to facts outside the pleadings,

so this motion will be addressed as a summary judgment motion.
As explained below, because the Court concludes that Plaintiff
has not pointed to a dispute of fact regarding his exposure to
tuberculosis or the adequacy of his medical treatment, the Court
will grant Defendant's motion for summary judgment pursuant to
Fed. R. Civ. P. 56(a).


## II.   BACKGROUND AND PROCEDURAL HISTORY

As the Court treats alleged facts differently on a Rule
12(b)(6) motion than a Rule 56(a) motion, the Court will recount
the relevant allegations in Plaintiff's Second Amended Complaint
("S.A.C.") [Docket Item 38][1] and, where appropriate, include
facts that are supported by evidence in the record; the Court
will also note what facts, if any, are meaningfully disputed in
the record.

Plaintiff was held as a pre-trial detainee in CCCF from June
11, 2009 until January 19, 2010.  S.A.C. at 2 ¶ 4.  Plaintiff
alleges that, during the six months he was held at CCCF, the
facility was "overpopulated" and "exceptionally understaffed,

_____

[1] As described below, Plaintiff filed his Second Amended
Complaint, with leave from the Court, after the instant motion
was filed and fully briefed.  The only substantive changes made
in the Second Amended Complaint from the First Amended Complaint
involve adding and removing other defendants and are not relevant
to the instant motion or Defendant CFG.  As the Second Amended
Complaint is the currently operative complaint, the Court will
cite to it in this Opinion.

creating an unsafe, unhealthy, and unsanitary environment for the Plaintiff." Id. 5 ¶ 3.  When Plaintiff was first admitted to CCCF, he was initially housed in the Intake/Diagnostic ("I/D") Unit, where he remained for approximately 21 days, from June 11, 2009 until July 2, 2009. Id. 11 ¶ c; 16 ¶ d.  In general, inmates at CCCF are not transferred from the I/D Unit into the general population until they are tested for tuberculosis and a physical exam is completed. Vargas Cert. ¶ 7.  Plaintiff alleges that this quarantine and clearance process "usually" takes approximately three to seven days. S.A.C. 15 ¶ a.  Throughout the time Plaintiff was housed in the I/D Unit, he was housed in a cell with two or three other inmates. Id. 15 ¶ c. Over the course of Plaintiff's stay in the I/D Unit, he shared a cell with approximately 50 other inmates. Id. 11 ¶ c.  Defendant CFG has no authority over or responsibility for inmate housing decisions, "including the number of inmates placed in a cell and which inmates are placed in a cell," those decisions are "made by the classification department at CCCF" and not by Defendant CFG. Vargas Cert. ¶ 6.

The day after Plaintiff was admitted, he completed a medical history screening, an oral/dental screening, and a mental health screening.  Rahman Medical Records, Def.'s Ex. B, at Rahaman CCCF

2-4.[2]  He was not, however, given a physical assessment on that
date; his medical records indicate that he refused a skin test
for tuberculosis exposure ("PPD") and a different test ("RPR") on
that date.  Rahman CCCR 5-6, 9, 15.  His records indicate that he
refused one of these tests on approximately nine other occasions
between June 12 and July 1, 2009.  Rahman CCCR 6.  As a result,
his records indicate, Plaintiff was kept in "medical lock in"
until he was medically cleared on July 1, 2009.  Rahman CCCR 9,
13.  Plaintiff claims, in his opposition brief, that many of the
medical records provided by Defendant regarding his refusal to
take the PPD test were fabricated, but points to no evidence from
which a reasonable factfinder could so conclude.  Pl.'s Opp. at ¶
D.1.

     Plaintiff claims for the first time in his opposition brief,
without attaching an affidavit attesting to such allegations,
that on June 12, after completing the dental, mental health, and
medical history screenings, he initially agreed to the PPD test
as well, but changed his mind when he observed the way the test
was going to be conducted.  Pl.'s Opp. ¶ A.  He states that the
attending nurse "picked up a prefilled syringe from amongst
hundreds" and denied Plaintiff's request to show him the "vial

_____

     [2] Plaintiff's medical records, attached under seal as
Defendant's Exhibit B, are Bates stamped "Rahman CCCF #".  For
consistency of reference, the Court will cite to the records by
this Bates number.

from which the solution [in the syringe] was drawn." Id.
Additionally, when Plaintiff was shown, after he so insisted, a
test vial of the solution, "the lot number and expiration date
[had been] obliterated." Id. As a result, he refused the PPD
test, but was told, at the time, that "he would be cleared for
general population housing after three days" which he supports by
noting a check mark next to "general population" in the
"placement" box on his June 12, 2009 medical history screening
form. Id.; Rahman CCCF 2.

Plaintiff alleges, in his opposition brief, that it was not
until several hours later that the nurse came back and told him
that the medical director had insisted that if Plaintiff did not
consent to a PPD test, he would not be cleared for the general
population, but Plaintiff continued to refuse the test. Id.
Plaintiff claims that he has proof of these allegations in the
form of an identification card imprinted with the words "medical
loc", which he says he would "produce[] at trial . . . ." Id.

Plaintiff alleges that, while he languished for three weeks
in the I/D Unit, he suffered several deprivations, including an
absence of cleaning materials, adequate soap, grievance forms,
reading or writing materials, religious services, laundry
services (or any ability to clean the single jumpsuit he had to
wear), or visits from family or friends. S.A.C. 16-17. In
addition, Plaintiff alleges that the air filtration system in the

6

I/D Unit was faulty, exposing Plaintiff to any contagious airborne illnesses of the other inmates of the I/D Unit, including tuberculosis. Id. 22 ¶ a. Additionally, Plaintiff alleged that while he was being housed in the I/D Unit, he shared a cell with another inmate, "E.E.", who he claims was "known to harbor a resistant strain of tuberculosis in active pathogenic form." Id. 22 ¶ b.

Plaintiff alleges that on June 29, 2009, E.E. told Plaintiff that he had been given a chest x-ray that morning. Id. 22 ¶ c. The following day, Plaintiff alleges, E.E. was removed from the I/D Unit by "gloved and masked officers and members of the medical staff." Id. 22 ¶ d. Plaintiff alleges that he later learned from another inmate that E.E. had been transferred to an outside hospital "with the diagnosis of tubercular pneumonia." Id.

The following day, July 1, 2009, Plaintiff alleges that he and his cellmates were directed to the medical unit where they were told that they must have chest x-rays performed. Id. 23 ¶ e. The medical director allegedly informed Plaintiff that he was being given a chest x-ray because he had been exposed to tuberculosis, apparently due to contact with E.E. Id. 24 ¶ e. Plaintiff allegedly consented to the chest x-ray after hearing this news on the condition that he be allowed to "peruse[]" the x-ray film later. Id. 24 ¶ f. However, Plaintiff's medical

7

records indicate that he refused a PPD test on that day.  Rahman
CCCF 9, 16.  After his consult with the medical director and his
chest x-ray, Plaintiff was cleared to transfer to the general
population of CCCF, which occurred July 2, 2009.  Id. 24 ¶ g.
Plaintiff's x-ray report, prepared by Rose Liu, M.D.,
Radiologist, states that Plaintiff's "lung fields are clear,
without mass, infiltrate, or effusion.  The osseous structures
are unremarkable. No tuberculosis is seen.  Impression: Normal
chest examination, without tuberculosis."  Rahman CCCF 8.

    Plaintiff alleges that he "lost more than 25 pounds" in the
period of time after his exposure to E.E.  S.A.C. 20 ¶ a.  He
also alleges that over the next several months, he "was unable to
obtain follow-up x-rays or weight determinations despite more
than thirty (30) sick call request[s]."  Id.  Plaintiff's medical
records reflect his many requests to review his July 1 x-ray and
to have other x-rays performed.  Rahman CCCF 19-41.  On the first
of these occasions, Plaintiff's records indicate that he was
offered the opportunity to discuss the results of his x-ray and
be examined by a nurse, but he refused, as he only wanted to
review the x-ray films himself.  See, e.g. Rahman CCCF 19.

    Defendant produced, under seal, the medical consultation
records of E.E., Plaintiff's cellmate suspected of having
tuberculosis.  Consultation Records, Def.'s Ex. C.  The
consultation, performed by Joseph A. Kuchler, M.D. at Our Lady of

8

Lourdes Hospital, indicates that E.E. was admitted to the hospital on June 30, 2009 and discharged on July 6, 2009.  Ex. C. at 1.  The consultation records an "impression" that "the patient has bilateral infiltrates with cavitary lesion."  Id.  Dr. Kuchler's consultation further states that "the patient underwent bronchoscopy and so far cultures are negative for tuberculosis." Id.  Apparently on the basis of this impression, Sandra Vargas states in her certification that E.E. "was found to not have tuberculosis."  Vargas Cert. ¶ 10.

Plaintiff was transferred from CCCF on January 19, 2010. S.A.C. 2 ¶ 4.  Two days later, on January 21, 2010, Plaintiff alleges that he had a "tuberculin skin test" performed at the Salem County Correctional Facility, which "remained nonreactive," indicating a negative result for tuberculosis.  Id. 25 ¶ 19.  Two months later, on March 18, 2010, Plaintiff alleges that he had a new "tuberculin skin test" performed that revealed a "positive reaction."  Id.  Plaintiff alleges that "this infectious response is consistent with the close contact experienced at CCCF."  Id.

Plaintiff, proceeding pro se, filed his first Complaint in this action on January 22, 2010.  [Docket Item 1.]  On May 27, 2010, the Court dismissed the Complaint sua sponte for, among other reasons, failure to comply with Rules 8(a)(2) and (d)(1) of the Federal Rules of Civil Procedure, finding the allegations insufficiently specific as to particular actions taken by

particular defendants.  [Docket Items 4 & 5.]  Plaintiff later
moved to reopen the case and to file an Amended Complaint, which
the Court granted on December 6, 2010. [Docket Item 9.]  The
Court, however, dismissed Plaintiff's claims against all
Defendants except Defendant Eric Taylor, Defendant CFG Health
Systems, LLC, and the (at the time) unidentified Medical Director
of CCCF.

    Defendant CFG later filed the instant motion to dismiss for
failure to state a claim or, alternatively, for summary judgment.
Plaintiff filed opposition to the motion in both a memorandum
brief and a subsequent letter brief. [Docket Items 27 & 26.]
Defendant's Reply brief followed [Docket Item 28], and was
docketed on the same day as Plaintiff's motion for leave to file
a Second Amended Complaint. [Docket Item 31.]  The Second Amended
Complaint is, in all material respects relevant to the instant
motion, identical to his First Amended Complaint; it added
Defendant Jeffrey D. Pomerantz, Medical Director at CCCF to the
pleading and removed the allegations and defendants dismissed by
the Court in its December 6, 2010 Order.  Plaintiff's motion for
leave to file was granted as unopposed.  [Docket Item 37.]

    After filing his motion for leave to amend, Plaintiff
submitted further opposition to Defendant's motion in the form of
three evidentiary objections and requests.  [Docket Item 34.]
Specifically, Plaintiff first objects to the certification of

Sandra Vargas pursuant to Federal Rule of Evidence 602, on the grounds that she cannot testify about Plaintiff's treatment at CCCF on the basis of personal knowledge because she did not treat him.  Second, Plaintiff objects to the consultation records of E.E., attached as Defendant's Exhibit C, pursuant to Fed. R. Ev. 106, claiming that the consultation record should be accompanied by a full hospital admission record and discharge summary. Finally, Plaintiff asks the Court to take judicial notice, pursuant to Fed. R. Ev. 201, of various scientific facts related to appropriate treatment of tuberculosis and the length of time between patient exposure and positive diagnostic testing that is necessary to detect tuberculosis.

## III. DISCUSSION

### A.    Standard of Review

#### 1.  <u>Motion to Dismiss for Failure to State a Claim</u>

In order to give defendant fair notice, and to permit early dismissal if the complained-of conduct does not provide adequate grounds for the cause of action alleged, a complaint must allege, in more than legal boilerplate, those facts about the conduct of each defendant giving rise to liability.  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007); Fed. R. Civ. P. 8(a) and 11(b)(3).  These factual allegations must present a plausible basis for relief (i.e., something more than the mere possibility

of legal misconduct).  See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1951 (2009).

In its review of a motion to dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P., the Court must "accept all factual allegations as true and construe the complaint in the light most favorable to the plaintiff." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  The assumption of truth does not apply, however, to legal conclusions couched as factual allegations or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 129 S.Ct. at 1949.  The Court's task, when reviewing a motion pursuant to Rule 12(b)(6), is to "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief, so the complaint must contain allegations beyond [merely claiming] plaintiff's entitlement to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009) (emphasis added).

2.  Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."

See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A
fact is "material" only if it might affect the outcome of the
suit under the applicable rule of law.  Id.  Disputes over
irrelevant or unnecessary facts will not preclude a grant of
summary judgment.  Id.

Summary judgment will not be denied based on mere
allegations or denials in the pleadings; instead, some evidence
must be produced to support a material fact.  Fed. R. Civ. P.
56(c)(1)(A); United States v. Premises Known as 717 S. Woodward
Street, Allentown, Pa., 2 F.3d 529, 533 (3d Cir. 1993).  The
nonmoving party must "do more than simply show that there is some
metaphysical doubt as to the material facts."  Matsushita Elec.
Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).

> [Rule 56] mandates the entry of summary judgment,
> after adequate time for discovery and upon motion,
> against a party who fails to make a showing
> sufficient to establish the existence of an element
> essential to that party's case, and on which that
> party will bear the burden of proof at trial.  In
> such a situation, there can be "no genuine issue as
> to any material fact," since a complete failure of
> proof concerning an essential element of the
> nonmoving party's case necessarily renders all
> other facts immaterial.

Celotex, 477 U.S. at 323.

However, the Court will view any evidence in favor of the
nonmoving party and extend any reasonable favorable inferences to
be drawn from that evidence to that party.  Hunt v. Cromartie,
526 U.S. 541, 552 (1999).

13

3.   <u>Standard of Review when Plaintiff is Pro Se</u>

When evaluating a motion to dismiss under Rule 12(b)(6), "[w]here the plaintiff is a <u>pro</u> <u>se</u> litigant, the court has an obligation to construe the complaint liberally." <u>Giles v. Kearney</u>, 571 F.3d 318, 322 (3d Cir. 2009).  However, on a motion for summary judgment, <u>pro</u> <u>se</u> plaintiffs are not relieved of the obligation to set forth admissible facts sufficient to survive summary judgment.  <u>Cf</u> <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972) (holding that "inartful" pleadings by pro se plaintiff should not subject claim to dismissal, but Plaintiff must still offer proof of such claims); <u>Zilich v. Lucht</u>, 981 F.2d 694, 695-96 (3d Cir. 1992) (holding <u>pro</u> <u>se</u> plaintiff should have opportunity to respond to evidence outside the pleadings with his own evidence before claim is dismissed).

**B.   Defendant's Motion Seeking Alternative Relief**

The Court begins its discussion on a preliminary matter.  In his letter brief in opposition to Defendant's motion, Plaintiff objects to Defendant's motion because it seeks alternative forms of relief via Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 56(a), and that deciding the two motions would require application of different standards of review.  The Court acknowledges that the burdens and standards of review are different in a motion to dismiss for failure to state a claim than in a motion for summary judgment, but does not find this to be an adequate reason to deny

14

Defendant's motion.

Courts frequently consider motions seeking multiple forms of relief, often in the same configuration as Defendant's.  <u>See Pryor v. National Collegiate Athletic Ass'n</u>, 288 F.3d 548, 559 (3d Cir. 2002) (affirming dismissal for failure to state a claim on motion that sought to dismiss or, in the alternative, for summary judgment).  When asked to rule on these two alternative forms of relief, a court should treat the two forms of relief separately, determining first if, under the appropriate 12(b)(6) standard, the plaintiff has failed to state a claim without reference to facts outside the pleadings, and separately determining whether summary judgment is warranted because no material dispute of fact exists in the record on an element of the plaintiff's claim.  <u>See Wholesale Auto Supply Co. v. Hickok Mfg. Co. Inc.</u>, 221 F. Supp. 935, 938 (1963).  The Court will consider Defendant's motion accordingly in the instant matter.

**B.   Evidentiary Objections and Request to take Judicial Notice**

The Court turns next to Plaintiff's late-filed evidentiary arguments.  First, the Court will partially grant Plaintiff's request to take judicial notice of specific facts regarding the development and diagnosis of tuberculosis.  Plaintiff requests that the Court take judicial notice of fact that three to six weeks are necessary to determine the results of sputum cultures, and that as many as ten weeks may be required to display a

15

positive reaction to tuberculin skin testing after exposure and infection.[3]  Federal Rule of Evidence 201(b) authorizes the Court to take judicial notice of facts "not subject to reasonable dispute" and categorizes facts amenable to judicial notice as those "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Ev. 201(b).

Defendant opposes taking notice of any of the facts advanced by Plaintiff on the ground that Plaintiff's source, a 1997 edition of the Encyclopedia Americana, is out of date.  However, the Court concludes that, regardless of Plaintiff's source, the fact that up to ten weeks may be necessary to display a positive reaction in a skin test to tuberculosis fits within the category of "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Indeed, on the web page of the Centers for Disease Control cited by Defendant for the definition "induration" (see Def.'s Br. at 1 n.1), the Court is able to verify this fact.[4]  Thus, the Court

_____

[3] Plaintiff also asks the Court to take notice of a third fact regarding the particular drugs indicated for treatment of various classes of tuberculosis.

[4] See Centers for Disease Control and Prevention, Tuberculosis (TB) Fact Sheets, available at http://www.cdc.gov/tb/publications/factsheets/testing/skintesting.htm (last visited on September 14, 2011) ("What Are False-Negative Reactions? Some persons may not react to the TST

will take judicial notice that as many as ten weeks may be required to display a positive reaction to tuberculin skin testing after exposure and infection.  However, the Court cannot similarly readily verify the other two facts Plaintiff seeks to judicially notice, and those facts will, therefore, not be noticed.

Secondly, the Court will deny Plaintiff's request to exclude the certification of Sandra Vargas pursuant to Fed. R. Ev. 602. Plaintiff argues that, because Ms. Vargas was not personally involved in the care of Plaintiff or E.E., her testimony is not admissible. However, the Court finds that Ms. Vargas's certification does not purport to assert facts on the basis of personal knowledge regarding the treatment of Plaintiff or E.E. Rather, she authenticates the medical records of Plaintiff and E.E., which she is capable of doing as the Director of Correctional Services for CFG for the State of New Jersey, with administrative responsibilities.  Vargas Cert. ¶¶ 1-2. Additionally, statements such as that "an inmate is not transferred to general population until he is tested for tuberculosis and a physical exam is completed" would appear to be within the personal knowledge of Ms. Vargas.  Thus, the Court

---

[tuberculin skin test] even though they are infected with M. tuberculosis. The reasons for these false-negative reactions may include, but are not limited to, the following: [. . .] Recent TB infection (within 8-10 weeks of exposure)."

will not exclude her certification on this basis.

Finally, the Court will likewise deny Plaintiff's request to exclude Defendant's Exhibit C, the consultation regarding Plaintiff's cellmate, E.E.  Plaintiff seeks to exclude the evidence pursuant to Fed. R. Ev. 106, which provides that "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it."  Fed. R. Ev. 106.  Plaintiff seeks to exclude the consultation because Defendant did not also include the patient's full hospital record, including the hospital admission record and discharge summary.

> This codification of the doctrine of completeness guards against the potential for evidence to be misleading when presented out of context. Admission of additional evidence is compelled 'if it is necessary to (1) explain the admitted portion, (2) place the admitted portion in context, (3) avoid misleading the trier of fact, or (4) insure a fair and impartial understanding.'

United States v. Evans, 356 F. App'x 580, 583 (3d Cir. 2009) (quoting United States v. Soures, 736 F.2d 87, 91 (3d Cir. 1984)).  The Court finds no indication that the inclusion of the consultation without the full hospital record is necessary to avoid unfairness or misleading the trier of fact, as there is no indication that other information exists that would change the

context or explain the information in a way relevant to
Defendant's motion.

### C.  Defendant's Motion to Dismiss

The Court turns next to Defendant's motion to dismiss for
failure to state a claim.  Defendant argues that Plaintiff's
Amended Complaint (and therefore, his Second Amended Complaint)
fails to state a claim for violating the Due Process Clause of
the Fourteenth Amendment because Plaintiff alleges that, after
having left CCCF, on January 21, 2010, Plaintiff tested negative
on a tuberculin skin test for tuberculosis.  S.A.C. 25 ¶ 19.  The
Court will deny this portion of Defendant's motion because, on
the facts alleged in the Second Amended Complaint, Plaintiff
states a claim for injury resulting from deliberate indifference
to Plaintiff's serious medical need.

The parties do not dispute the appropriate constitutional
standard in this case.  Under the Due Process Clause of the
Fourteenth Amendment, government officials are required to
provide medical care to inmates being detained prior to
conviction, because to not do so would amount to punishment in
the absence of a proper determination of guilt.  King v. County
of Gloucester, 302 F. App'x 92, 96 (3d Cir. 2008).

Whether the minimum standard for inmate medical care under
the Fourteenth Amendment is higher than the Eighth Amendment has
never been conclusively determined by the United States Supreme

19

Court or the Third Circuit.  City of Revere v. Massachusetts General Hosp., 463 U.S. 239, 244 (1983); King, 302 F. App'x at 96 ("the Supreme Court has concluded that the Fourteenth Amendment affords pretrial detainees protections 'at least as great as the Eighth Amendment protections available to a convicted prisoner,' without deciding whether the Fourteenth Amendment provides greater protections.") (citing Natale v. Camden County Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003)).

Courts generally, therefore, apply the same "deliberate indifference" standard of the Eighth Amendment to claims arising under the Fourteenth Amendment.  See Pearson v. Prison Health Serv., 348 F. App'x 722, 724 (3d Cir. 2009) ("In order to state an Eighth Amendment claim for deliberate indifference to medical needs, a plaintiff must plead '(i)a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need.") (quoting Natale at 582 (applying standard in Fourteenth Amendment case, but citing to Eighth Amendment cases))

Therefore, to state a claim for relief, Plaintiff must allege (1) that he suffered from a serious medical need, and (2) that Defendant committed acts or omissions that indicate deliberate indifference to that need.  In addition, to state a claim for a violation of § 1983, Plaintiff must plausibly allege that Defendant's constitutional violation was the proximate cause

20

of the injuries and damages Plaintiff has alleged.  Burns v. PA
Dept. of Corrections, 642 F.3d 163, 180-81 (3d Cir. 2011).

Defendant argues that Plaintiff has not plausibly alleged
that any conduct by CFG proximately caused any injury to
Plaintiff.  The Court disagrees.

Plaintiff has alleged that CFG retaliated against Plaintiff
by punitively extending his period of detention in the I/D Unit,
where he and as many as 50 other inmates were exposed to an
individual, E.E., who, Plaintiff alleges, was infected with
tuberculosis.  Additionally, Plaintiff has alleged that he sought
treatment and diagnosis from Defendant but was refused.  Then,
approximately eight to ten weeks after departing from the CCCF,
he tested positive for tuberculosis himself, thereby giving rise
to a reasonable inference that the (allegedly insufficient)
treatment provided to Plaintiff and other members of the CCCF
proximately caused his infection.  That Plaintiff also alleged
that he tested negatively for tuberculosis on January 21, 2010 is
not necessarily inconsistent with Plaintiff's claim.

First, Defendant's argument involves an implied premise that
relies on facts not alleged within Plaintiff's Second Amended
Complaint.  Specifically, Defendant's implied premise is that
exposure to an infected inmate in June of 2009 could not cause a
positive tuberculin skin test result in March of 2010 when
Plaintiff additionally tested negative in January of 2010.  This

premise relies on the fact that a tuberculosis infection would be identifiable on a skin test five months after exposure and infection.  However, Plaintiff does not allege that fact in his Second Amended Complaint and, unless the Court were to rely on facts outside the complaint (such as the judicially noticed fact introduced by Plaintiff), the Court cannot so conclude on a Rule 12(b)(6) motion.  <u>Lum v. Bank of America</u>, 361 F.3d 217, 222 n.3 (3d Cir. 2004) ("In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.") (citation omitted).

Indeed, even if the Court were to consider the general period of time tuberculosis would show on a skin test, Defendant's argument still fails.  Plaintiff alleged, in addition to himself, that several other inmates at CCCF were exposed to the allegedly infectious E.E.  Therefore, under Plaintiff's allegations, the direct source of Plaintiff's infection was not necessarily his contact with E.E., but perhaps through an intermediary who infected Plaintiff later in the fall of 2009 while Plaintiff was still under the care of CFG, and which might have been prevented had CFG been providing adequate care.

Thus, the Court will not dismiss Plaintiff's Second Amended Complaint for failure to state a claim merely because Plaintiff

22

alleged that he tested negatively for tuberculosis on January 21, 2010.

### D.   Defendant's Motion for Summary Judgment

Once the Court turns to Defendant's motion for summary judgment and considers facts outside the pleadings, however, the result is different.

Defendants argue that Plaintiff cannot point to a dispute of fact in the record regarding either that the medical care Plaintiff received in CCCF was constitutionally infirm or that such care was the cause of Plaintiff's injury.  The Court agrees with Defendant.

#### 1.   Deliberate Indifference

First, Defendant argues that Plaintiff cannot point to evidence that the care provided by CFG met the deliberate indifference standard.  The record demonstrates that Plaintiff was not cleared from the I/D Unit for three weeks because he refused to permit a PPD skin test for tuberculosis.  The record further demonstrates that when Defendant's doctors suspected that an inmate housed with Plaintiff was infected with Tuberculosis, they removed him from the I/D Unit and quarantined him in an outside hospital until he tested negatively for tuberculosis. The record further demonstrates that, upon such a discovery, CFG's medical professionals identified the persons with whom the potentially infected inmate had close contact and attempted to

test them as well, with both skin tests and x-rays.  They further offered care to Plaintiff in the form of discussing his x-ray results with him and offering him a physical examination. Defendant argues that this evidence is inconsistent with the deliberate indifference standard.

Deliberate indifference is a "subjective standard of liability consistent with recklessness as that term is defined in criminal law."  Nicini v. Morra, 212 F.3d 798, 811 (3d Cir. 2000).  Thus, errors equivalent to negligence or medical malpractice, or mere disagreements about the proper course of treatment do not meet this standard.  Lanzaro, 834 F.2d at 346. The Third Circuit has found acts or omissions that indicate deliberate indifference in cases where

> the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment.

Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Under this standard, and on the facts in the record regarding the medical care Plaintiff received, the Court concludes that no reasonable factfinder could conclude that Defendant's care was constitutionally infirm.  Plaintiff's allegations of deliberately indifferent treatment boil down to medical disagreements regarding the wisdom of his treatment,

24

which is insufficient to prove a violation of the Constitution.
See <u>Clark v. Doe</u>, Civ. No. 99-5616, 2000 WL 1522855, at * 2 (E.D.
Pa. Oct. 13, 2000) (finding no deliberate indifference where
"inmate has received some level of medical care.  Inmates'
disagreements with prison medical personnel about the kind of
treatment received have also generally have not been held to
violate the Eighth Amendment.") (internal citations omitted).

    The Court recognizes that Plaintiff claims, for the first
time in his opposition brief (and not in the form of an affidavit
or otherwise admissible format), that to be cleared from the I/D
Unit on June 12, 2009, he was offered an injection of a
potentially expired solution as part of his PPT tuberculosis skin
test.  The Court finds that it cannot deny summary judgment on
the basis of Plaintiff's unsworn allegations in his brief.  <u>See</u>
Fed. R. Civ. P. 56(c)(1)(A) (party offering assertion in
opposition to summary judgment "must support the assertion by:
citing to particular parts of materials in the record, including
depositions, documents, electronically stored information,
affidavits or declarations, stipulations (including those made
for purposes of the motion only), admissions, interrogatory
answers, or other materials").

    Indeed, even were Plaintiff's allegations to have been
offered in the form of an affidavit, the Court finds that it
would have been insufficient to demonstrate a dispute of fact

over Defendant's alleged deliberate indifference.  Plaintiff does
not allege that all or even more than one of the PPT syringes
contained expired solution.  At most, Plaintiff's allegation
indicates a negligent mistake.  He has not, for example, alleged
that CFG had a policy of only using expired solution in its PPT
syringes, or even that several inmates were offered expired PPT
solution, but only that the one sample he examined did not
display a visible expiration date.  Thus, even were the Court to
consider Plaintiff's unsupported allegations, the Court would
find that Plaintiff has not pointed to evidence from which a
reasonable factfinder could conclude that Defendant's care was
deliberately indifferent to a serious medical need.

Finally, Plaintiff argues in opposition that he would be
able to introduce evidence sufficient to raise various disputes
of fact were he to conduct depositions of various employees of
Defendant, which he had not done at the time of his opposition.
However, the Court notes that any disputes of fact that Plaintiff
claims he would be able to raise are not material to his claims.
For example, Plaintiff claims that he would be able to raise a
dispute over whether his medical records were "fabricated" to
include reference to several refusals of the PPD test in June of
2009.  However, as Plaintiff himself admits he refused to consent
to the PPD test on June 12, 2009, whether or not he subsequently
refused additional tests would not be a material dispute.

Therefore, the Court concludes that no dispute of fact exists in the record that would support a finding of Defendant's deliberate indifference.

       2.  <u>Proximate Cause</u>

Secondly, as in its argument for dismissal under Rule 12(b)(6), Defendant argues that Plaintiff cannot meet his burden at this stage on the proximate cause element.  Defendant argues that there is no evidence in the record from which a reasonable factfinder could conclude that Plaintiff contracted tuberculosis due to its care or treatment.  The only allegation of exposure to tuberculosis in Plaintiff's Second Amended Complaint is due to Plaintiff's cellmate, E.E., who Plaintiff alleges was infected with tuberculosis.  However, there is no evidence in the record that E.E. had tuberculosis.  E.E.'s consultation records demonstrate that he did not test positive for tuberculosis at the hospital where he was taken on June 30, 2009.  Def.'s Ex. C.

Plaintiff argues in opposition that E.E.'s consultation cannot affirmatively establish that E.E. did <u>not</u> have tuberculosis as Sandra Vargas seems to conclude.  <u>See</u> Vargas Cert. ¶ 10.  Plaintiff argues persuasively that it is consistent with the evidence that E.E. may have been infected with tuberculosis at the time of the consultation, but the test he was given was simply a false negative because he had only recently been infected.  The Court agrees with Plaintiff that E.E.'s

27

consultation record does not establish that E.E. was free of tuberculosis as of June 30, 2009.  However, it is not Defendant's burden to affirmatively establish that E.E. was tuberculosis free, but rather Plaintiff's burden to point to some evidence in the record from which a reasonable factfinder could conclude that Plaintiff was exposed to and infected with tuberculosis while at CCCF.

Plaintiff postulates that E.E. must have been sick with something, and speculates that it must have been tuberculosis, but Plaintiff's speculation is insufficient to raise a dispute of fact sufficient to survive summary judgment.  Ridgewood Bd. of Educ. v. N.E., 172 F.3d 238, 252 (3d Cir. 1999) (stating that speculation and conclusory allegations are insufficient to forestall summary judgment); Sterling Nat'l Mortgage Co. v. Mortgage Corner, Inc., 97 F.3d 39, 44 (3d Cir. 1996) (stating that "[m]ere speculation about the possibility of the existence of such facts" does not raise triable issue to defeat motion for summary judgment).  The Court therefore concludes that Plaintiff cannot meet his burden of pointing to evidence in the record sufficient to raise a dispute of fact over proximate cause. Consequently, summary judgment is warranted against Plaintiff's claims against Defendant CFG.

Additionally, as an independent reason to grant summary judgment against Plaintiff's claims against Defendant CFG, the

Court notes that there is no admissible evidence in the record establishing that Plaintiff himself ever contracted or was diagnosed with tuberculosis.  The only support of this contention seems to be Plaintiff's allegation that on "March 18, 2010, Plaintiff's tuberculin skin test revealed a positive reaction." S.A.C. 25 ¶ 19.  Plaintiff does not submit evidence in the form of medical records or even a sworn affidavit attesting to this fact.  Thus, the Court concludes that Plaintiff is unable to point to a dispute of fact that his treatment by Defendant CFG at CCCF caused him any injury.  The Court therefore finds that this is an independent reason to grant Defendant's motion for summary judgment.

## IV.   CONCLUSION

The Court has reviewed the sufficiency of Plaintiff's allegations against Defendant CFG and, separately, reviewed the facts in the record to support those allegations.  The Court has concluded that, while Plaintiff's Second Amended Complaint sufficiently states a claim against Defendant CFG, the Court has found no evidence from which a reasonable factfinder could conclude that his medical care was constitutionally infirm or that the care provided by Defendant was the proximate cause of Plaintiff's alleged injury, or, indeed, that Plaintiff suffered any injury at all.  Consequently, the Court will grant

Defendant's motion for summary judgment and dismiss the action as to Defendant CFG.  The accompanying Order shall be entered.


**September 20, 2011**                    **s/ Jerome B. Simandle**
Date                                      JEROME B. SIMANDLE
                                          United States District Judge